## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NAH-FEE HINTON, *et al.*, | ) | CASE NO. 3:24-cv-01944 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | SEPTEMBER 5, 2025 |
| *Defendants*. | ) | |

## <u>INITIAL REVIEW ORDER</u>

Kari A. Dooley, United States District Judge:

Plaintiffs, a group of inmates at Federal Correctional Institution, Danbury ("FCI Danbury"), initiated this action *pro se* via complaint filed on December 5, 2024. The operative Second Amended Complaint ("SAC") was filed on December 26, 2024. *See* SAC, ECF No. 69. Therein, 33 individual Plaintiffs assert claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (the "FTCA"), and for violations of their constitutional rights under the First, Fourth, and Eighth Amendments, against the United States, the Acting Warden of FCI Danbury Darek Puzio ("Puzio"), and Dr. Robert Greene, Jr. ("Greene"),[1] each in his individual capacity. Plaintiffs seek damages, as well as declaratory and injunctive relief.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and

---

[1] The Court notes that, although Plaintiffs at times spell Dr. Greene's name as "Green," the correct spelling is "Greene." *See Masucci v. United States*, No. 3:23-CV-00623-VDO, 2024 WL 3493214, at *1 (D. Conn. July 22, 2024) (referring to "Dr. Robert Greene Jr., a medical doctor employed by the Federal Bureau of Prisons"); *Broaddus v. Pullen*, No. 3:22-CV-172 (SRU), 2023 WL 3158976, at *1 (D. Conn. Apr. 28, 2023) ("The Court may take judicial notice of matters of public record.").

interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In conducting its initial review, a court may consider "relevant records and written correspondences" attached to the complaint. *See Breton v. Lamont*, No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *2 (D. Conn. Aug. 23, 2021) (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002)).

**Procedural History**

This action was commenced via Complaint filed on December 5, 2024. ECF No. 1. Plaintiffs subsequently amended their complaint twice, and the SAC is the operative complaint in this action. Of the 33 Plaintiffs identified therein, the Court permitted 6[2] to proceed *in forma pauperis*. *See* ECF Nos. 107, 109. On March 4, 2025, the Court denied the motions to proceed *in forma pauperis* filed by 21 plaintiffs,[3] and ordered those plaintiffs to pay their respective filing fees on or before March 31, 2025. *See* ECF No. 116.

Several plaintiffs filed motions to proceed *in forma pauperis* at the time the first Complaint was filed on December 5, 2024, but did not provide the Court with certified copies of their inmate

---

[2] Sheldon Berry, Derick Coulanges, Jonathan King, Rickey Lynch, Pritkumar Patel, and Muntasir Rashid.

[3] Timothy Armstrong, Deshawn Baugh, Jaquon Benejan, Tyrome Brehon, Kenneth Burghardt, Dominique Butler, Christopher Castelluzzo, Mahmoud Elhassan, Jermaine Gonsalves, Nah-Fee Hinton, Da'Jahn Howard, Marnell Johnson, Christopher Keeser, Brian Lockett, Jose Matos, Alexander Mayer, Rasheed Mingues, Michael Morris, Bryan Osborne, Keyenn Rodgers, and Scott Velez.

trust account statements. On December 13, 2024, the Court issued a Notice of Insufficiency, alerting Plaintiffs that their claims might be dismissed if they did not file a certified account statement or pay the filing fee by January 2, 2025. ECF No. 34. Four of this subset of Plaintiffs[4] failed to submit the required certified account statements. *See* ECF Nos. 13, 19, 24, 28. The Court therefore denied their motions to proceed in forma pauperis on March 7, 2025, and instructed them that failure to pay the filing fee on or before March 31, 2025, would result in dismissal of their claims from this action. *See* ECF No. 118.

Two additional plaintiffs[5] neither filed motions to proceed *in forma pauperis* nor paid their filing fees. On March 7, 2025, the Court advised these plaintiffs that their failure to pay the filing fee on or before March 31, 2025, would result in dismissal of their claims from this action. *See* ECF No. 119.

Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915, all Plaintiffs not proceeding *in forma pauperis* are required to pay the filing fee. *See Pinson v. Fed. Bureau of Prisons*, No. 24-CV-1312 (LTS), 2024 WL 2133831, at *3, n.4 (S.D.N.Y. Apr. 16, 2024) (citing, *inter alia*, *Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir. 2009). The Court provided several notices and extensions, allowing Plaintiffs not authorized to proceed *in forma pauperis* ample time to pay their individual filing fees. Twelve Plaintiffs[6] did so in accordance with the final deadline established by the Court: June 6, 2025. *See* ECF No. 137. On June 17, 2025, the Court issued an

---

[4] Dario George, Juan Lasanta, Aheem Monsalavatge, and Ibn Ross.

[5] Garret Martin Jr. and Andrew McLeod.

[6] Timothy Armstrong, Jaquon Benejan, Tyrome Brehon, Kenneth Burghardt, Na-Fee Hinton, Marnell Johnson, Christopher Keeser, Brian Lockett, Rasheed Mingues, Michael Morris, Bryan Osborne, and Scott Velez.

order confirming dismissal of the claims of 15 Plaintiffs[7] who, as of that date, had neither been authorized to proceed *in forma pauperis* nor paid the filing fee. *See* ECF No. 141.

Eighteen Plaintiffs' claims proceeded to Initial Review. Those Plaintiffs are: Jaquon Benejan, Jonathan King, Scott Velez, Muntasir Rashid, Derick Coulanges, Pritkumar Patel, Rickey Lynch, Sheldon Berry, Christopher Keeser, Timothy Armstrong, Bryan Osborne, Nah-Fee Hinton, Rasheed Mingues, Tyrome Brehon, Kenneth Burghardt, Brian D. Lockett, Marnell Johnson, and Michael Morris. These remaining Plaintiffs are pro se prisoners, who, at the relevant times, were incarcerated at FCI Danbury. *See* SAC at ¶ 3. Although as of this writing some Plaintiffs have been transferred to different facilities or released from Bureau of Prisons ("BOP") custody altogether, each were sentenced inmates at the time of the alleged conduct. [8]

**Factual Allegations**

The Court summarizes only those allegations necessary to provide context for its initial review, and accepts the allegations in Plaintiffs' Complaint as true for initial review purposes. *See Abbas*, 480 F.3d at 639.

Plaintiffs collectively claim that the living conditions at FCI Danbury are unsuitable—namely, the facility is overcrowded, which impacts their health, safety, and ability to maintain a standard of proper sanitation. SAC at ¶¶ 7–8 (alleging the facility is over capacity by approximately 600 additional inmates). Inmates with contagious infections are housed with non-

---

[7] Deshawn Baugh, Dominique Butler, Christopher Castelluzzo, Mahmoud Elhassan, Dario George, Jermaine Gonsalves, Da'Jahn Howard, Juan Lasanta, Garret Martin Jr., Jose Matos, Alexander Mayer, Andrew McLeod, Aheem Monsalavatge, Keyenn Rodgers, and Ibn Ross.

[8] The Court may take judicial notice of the BOP website. *Palmer v. Flowers*, No. 3:25-CV-356 (SVN), 2025 WL 1220183, at *1 (D. Conn. Apr. 28, 2025). Per the BOP website, those who remain at FCI Danbury are Jonathan King; Muntasir Rashid; Derick Coulanges; Sheldon Berry; Bryan Osborne; Rasheed Mingues; Tyrome Brehon; Kenneth Burghardt; Brian D. Lockett; and Michael Morris. Christopher Keeser, Nah-Fee Hinton, Pritkumar Patel, and Marnell Johnson have been transferred to different facilities, and Timothy Armstrong, Rickey Lynch, Jaquon Benejan, and Scott Velez are not in BOP custody.

infected inmates, causing some Plaintiffs to become sick. *Id.* at ¶¶ 10, 12. Worsening matters, poor ventilation and air quality have further impacted Plaintiffs' health. *Id.* at ¶ 13.

Plaintiffs submit that asbestos, fiberglass dust, and black mold spores in the facility cause them to experience symptoms including nosebleeds, shortness of breath, lung infections, swollen lymph nodes, and other respiratory issues. *Id.* at ¶¶ 13, 15–16. Asbestos, they allege, exists throughout the premises' flooring and piping insulation, which produces particles that Plaintiffs eventually inhale. *Id.* at ¶¶ 22–25. In particular, Plaintiffs contend that six of them have contracted pneumonia as a result of this exposure. *Id.* at ¶ 25. Black mold is present on the shower walls and the ceiling, and it has caused certain Plaintiffs to develop foot fungi, among other ailments. *Id.* at ¶¶ 26–30.[9] The ventilation issues extend to the facility's air conditioning, which in many units is non-existent, causing Plaintiffs to experience dehydration and heat stroke during the summer months. *Id.* at ¶ 14.

Plaintiffs submit that the bathrooms, including the showers and the toilets, are insufficient for the number of inmates, and often inoperable. *Id.* at ¶¶ 17–20. This results in Plaintiffs' exposure to human waste, which increases their incidence of bacterial infections, rashes, and other infections. *Id.* at ¶ 21.

Plaintiffs also describe an incident involving contaminated water after a November 30, 2024, local water main break. *Id.* at ¶ 31. Plaintiffs claim that despite receiving notice from municipal officials that no one should drink the water, Defendant Puzio intentionally did not advise inmates to avoid the contaminated water. *Id.* ¶ at 32. Plaintiffs, unaware of the danger for four days until notified by "Team Members Counsels" on or about December 4, became ill from drinking and using the contaminated water. *Id.* at ¶¶ 33–35. During that time, Plaintiffs were neither

---

[9] The Court notes that the SAC has two paragraphs 26. This citation refers to the second one, on page 8.

permitted to purchase unlimited bottled water from the commissary, nor given sufficient fresh water free of charge. Plaintiffs say Defendant Puzio issued Plaintiffs one water bottle per day each for four days, causing them to experience symptoms of dehydration. *Id.* at ¶ 35.

Apart from sanitation and air quality, Plaintiffs submit that the facility's overcrowding increases the number of fights between inmates. *Id.* at ¶ 9. Plaintiffs allege that two of the named Plaintiffs identify as transgender and/or gay,[10] both of whom were "brutally beat up" as a result of their forced proximity to other inmates. *Id.* at ¶¶ 9, 37. They claim that, due to the overcrowding, they have faced violent assaults and when they notified prison personnel about the risk of assaults, those personnel told them, "your kind should not come to prison." *Id.* at ¶ 38. Plaintiffs allege prison personnel "looked the other way" while the assaults occurred, and told Plaintiffs to remain silent about the attacks or else they would reoccur. *Id.* at ¶ 39.

Separately, Plaintiffs allege that prison personnel opened their legal mail from this Court related to this litigation. *Id.* at ¶¶ 40–42. They allege this was the result of Defendant Puzio's failure to train the mailroom personnel. *Id.* at ¶ 82. Plaintiffs further allege that Defendant Puzio, in response to their grievances about their conditions of confinement, retaliated against them by prohibiting their use of the law library and subjecting their cells to extensive searches, during which their belongings were thrown to the ground. *Id.* at ¶ 43. Prior to filing their initial complaint in this action, Plaintiffs attempted to resolve the issues raised therein, but were thwarted when facility staff refused to process their grievance forms and threatened them with housing transfers, which they worried would impede their medical treatment. *Id.* at ¶¶ 77–78.

The SAC also includes allegations of consistently inadequate medical treatment. *Id.* at ¶ 61. Individual Plaintiffs allege the following with respect to their medical care:

---

[10] It is not clear whether these two Plaintiffs remain in the action or if they have been dismissed.

- Plaintiff Lynch alleges that Defendant Greene failed to administer appropriate care for nerve injuries to his hip, legs, and feet, as well as a possible infection and severe swelling to the same. *Id*. at ¶¶ 52–54, 70–71.

- Plaintiff Morris alleges that Greene ignored his medical complaints, including lung infections, respiratory issues, foot fungus, blisters, and skin rashes. *Id*. at ¶¶ 55–56.

- Plaintiff Keeser alleges that Greene provided him with incorrect medication, resulting in decreased bone density, and failed to scheduled Plaintiff Keeser's hip replacement surgery, rendering him wheelchair bound, bedridden, and partially paralyzed, while suffering from infections over 89% of his body. *Id*. at ¶¶ 57–59, 72–73.

- Plaintiff Burghardt alleges that Greene failed to follow up with him about his chronic kidney disease, which has worsened his symptoms to include chronic pain and severe headaches. *Id*. at ¶ 60.

- Plaintiff Armstrong alleges that Greene failed to properly prescribe antibiotics following an arm surgery, resulting in infection and potential amputation. *Id*. at ¶¶ 66–67.

- Plaintiff Brehon alleges that he has a respiratory condition, including swollen lymph nodes and a lung infection, along with chronic chest pain and that, despite multiple attempts, Greene has not followed up with him to provide care. *Id*. at ¶¶ 68–69.

Together, Plaintiffs add that "all Plaintiffs are suffering from similar [permanent] ailments, including painful respiratory infection, and lung infection . .[,]. chronic painful foot fungus infection, rashes on buttock . . . [,]" and bacterial infections, including four unnamed Plaintiffs with MRSA and Staph infections. Some of these maladies, Plaintiffs claim, stem from the deplorable conditions at FCI Danbury. *Id*. at ¶ 73.

As recourse, Plaintiffs seek declaratory and injunctive relief, as well as monetary damages. *Id*. at ¶¶ 83–90.

**Discussion**

Plaintiffs' allegations involve multiple alleged violations, only some of which are universal to all Plaintiffs. The Court construes the SAC as asserting claims for negligence and violations of Plaintiffs' First, Fourth, and Eighth Amendment rights.

As a threshold matter, to the extent that they attempt to, Plaintiffs cannot proceed as a putative class action. As *pro se* litigants, Plaintiffs may not bring a class action lawsuit because non-attorneys may not represent anyone other than themselves. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (recognizing litigant generally has no standing to claim violation of rights of third parties); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (holding that *pro se* litigant has no right to represent third parties). *See also Coleman v. Semple*, No. 3:24-CV-464 (SRU), 2025 WL 1316596, at *2 (D. Conn. Apr. 9, 2025).

Having established that Plaintiffs may not proceed as a class, the Court evaluates the merits of Plaintiffs' claims, and attempts to determine which well-pled claims, if any, are common to all Plaintiffs.

### *FTCA*

Plaintiffs purport to bring their claims pursuant to the Federal Tort Claims Act ("FTCA"). *See* SAC at ¶ 1. "The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment." *Dominy v. United States*, No. 25-CV-1279 (LTS), 2025 WL 1519113, at *1 (S.D.N.Y. May 27, 2025). Before a district court has subject matter jurisdiction over an FTCA claim, the plaintiff must have exhausted his administrative remedies by presenting the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). Section 2675(a) provides, in pertinent part, that:

> An action shall not be instituted upon a claim against the United States for
> money damages … unless the claimant shall have first presented the claim

> to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail… The failure of an agency to make final disposition of a claim within six months after it is filed shall… be deemed a final denial of the claim for purposes of this section.

Presentation requires that a claimant submit written notice to the agency, and that the notice must provide "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins v. United States*, 996 F.3d 102, 109, 111 (2d Cir. 2021); (citing *Romulus v. United States*, 160 F. 3d 131, 132 (2d Cir. 1998)). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements, including exhaustion," and "[i]n the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *Manchanda v. Lewis*, No. 21-1088-CV, 2021 WL 5986877, at *2 (2d Cir. Dec. 17, 2021) (internal quotations and citation omitted). This requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Here, Plaintiffs have not satisfied the presentation requirement, because they have "failed to demonstrate that [their claims were] 'finally denied by the agency,' either 'in writing' or by 'failure to make [a] final disposition within six months after [their claims were] filed." *Manchanda*, 2021 WL 5986877, at *4 (quoting 28 U.S.C. § 2675(a)). Plaintiffs allege that they exhausted their claims by submitting the requisite form to the BOP regional office, and further allege that BOP personnel investigated those claims. Am. Compl. at ¶¶ 44-46. The SAC reads, "[o]n or about November 25, 2024, after 'six months' of exhaustion with Danbury FCI officials to this action,

Plaintiffs submitted a 'Form 95,' to the Northern Regional Office, Bureau of Prison, in Pennsylvania." *Id*. at ¶ 45.[11]

Though a Standard Form 95 ("SF-95") can be used to satisfy the FTCA's presentment requirement, *Hardie v. United States*, No. 17CV01201FBRLM, 2018 WL 5268112, at *1, n.1 (E.D.N.Y. Oct. 23, 2018), and Plaintiffs generally describe the content of their SF-95 submission as tracking the allegations in the SAC, *see* SAC at ¶ 46, Plaintiffs make no allegations regarding a final BOP disposition. Further, Plaintiffs claim that they submitted their SF-95 on or about November 25, 2024, only 11 days before they filed the initial Complaint in this action. *See* ECF No. 1.

In addition to submitting an SF-95 to the BOP regional office, Plaintiffs allege that they twice tried to resolve their claims with FCI Danbury personnel "informally," and that exhausting their claims would be futile and a "waste of time," because prison officials specifically "refused" to accept the forms necessary for them to utilize the BOP's administrative remedy program. *Id*. at ¶¶ 75–77. Even accepting this as true, Plaintiffs do not allege any obstacles with respect to their SF-95 submission. Because Plaintiffs did not receive notice of a final action from the BOP on the claims raised in their SF-95, and did not wait six months to file their complaint in this action, any claims in the SAC brought pursuant to the FTCA are dismissed without prejudice as premature. *See Manchanda*, 2021 WL 5986877, at *4; *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733 KAM MDG, 2013 WL 5300721, at *14 (E.D.N.Y. Sept. 19, 2013).

To the extent that Plaintiffs assert claims for injunctive relief pursuant to the FTCA, "the FTCA only authorizes actions for money damages," and so those claims are also dismissed but

---

[11] The Standard Form 95, often referred to as an "SF-95" or "Form-95," "is used to present claims against the United States under the FTCA for property damage, personal injury, or death," and is available for claimants via the U.S. Gen. Servs. Admin. website. *Colucci v. United States Postal Serv.*, No. 21-CV-827 (MKB), 2021 WL 1902539, at *4 (E.D.N.Y. Apr. 20, 2021). Claimants may then complete the form and submit it to the appropriate federal agency. *Id.*

with prejudice. *Waters v. United States*, No. 21-CV-7099 (VEC), 2023 WL 4409074, at *1, n. 6

(S.D.N.Y. July 7, 2023) (citing *Birnbaum v. United States*, 588 F.2d 319, 335 (2d Cir. 1978)).

### *Claims for Declaratory and Injunctive Relief*

In their "Prayer for Relief," Plaintiffs request the Court to issue a declaration that the

Defendants violated their rights under the constitution and the law of the United States, and

injunctive relief requiring Defendants Puzio and Greene to ameliorate the conditions alleged in the

SAC, cease their deliberate indifference to medical needs, and end the practice of threatening

Plaintiffs and other inmates for filing grievances. To the extent that Plaintiffs seek injunctive relief

against the United States as a defendant, their claims are barred by sovereign immunity and are

dismissed. *Coombs v. United States*, No. 21-CV-3761 (LTS), 2021 WL 2453496, at *2 (S.D.N.Y.

June 15, 2021) ("sovereign immunity bars suit against the United States either for damages or for

injunctive relief requiring government action," citing *Larson v. Domestic & Foreign Com. Corp.*,

337 U.S. 682, 687 (1949)).

Sovereign immunity "does not bar claims brought against federal officials *in their official

capacities* for injunctive relief." *Crespo v. Hurwitz*, No. 17CV6329RRMPK, 2020 WL 7021658,

at *4 (E.D.N.Y. Nov. 30, 2020) (emphasis added; holding that an incarcerated plaintiff's Eighth

Amendment claim for injunctive relief, brought against BOP officials in their official capacities,

pursuant to 28 U.S.C § 1331 and 28 U.S.C. § 1361, was not barred by sovereign immunity.).

However, here Plaintiffs have only named Defendants Puzio and Green in their individual

capacities. Therefore, Plaintiffs' claims for declaratory or injunctive relief against the individual

defendants are dismissed. *See Gaston v. Cuervo*, No. 3:24-CV-1973 (SVN), 2025 WL 1424682,

at *3, n. 5 (D. Conn. May 16, 2025) (holding that, in the context of state officials, "claims for

injunctive relief may not be asserted against defendants in their individual capacities, as they would

not have the authority to provide such relief in that capacity."); *See also Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (dismissing claims for declaratory and injunctive relief where plaintiff sued federal employees in their individual capacities but claims were based on decisions made in their official capacities).

Further, "[a]n inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility." *Diaz v. Kopp*, No. 22-1678, 2025 WL 2152931, at *2 (2d Cir. July 30, 2025). Their own docketed address changes and/or the BOP website indicates that the following Plaintiffs are no longer incarcerated at FCI Danbury: Timothy Armstrong, Jaquon Benejan, Nah-Fee Hinton, Marnell Johnson, Christopher Keeser, Rickey Lynch, Pritkumar Patel, and Scott Velez. As such, any claims for injunctive relief that they assert in the SAC are dismissed as moot.

### *Bivens*

Plaintiffs also allege various constitutional violations. However, the FTCA "has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts under the federal constitution." *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (alteration in original); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) ("the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

Construing Plaintiffs' SAC liberally, and in light of the fact that Congress has not created a statutory remedy for constitutional violations against federal officials acting under the color of federal law, *see Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017), the Court analyzes their constitutional claims under the framework established by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). A *Bivens* claim is "the federal analog to

suits brought against state officials under . . . § 1983." *Iqbal*, 556 U.S. at 675–76. In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).

A *Bivens* claim may be brought against a federal official in his individual capacity, rather than his official capacity, and only for his own acts. *See FDIC v. Meyer*, 510 U.S. 471, 485–86 (1994) (*Bivens* authorized lawsuits for monetary damages against federal officials in their individual capacities only); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). Plaintiffs name both Defendants Puzio and Goode in their individual capacities only. Further, because the only remedy in a *Bivens* claim is for money damages, any implied *Bivens* claim against the United States and any requests for injunctive relief based on the *Bivens* claims are dismissed.

The Supreme Court has recognized a *Bivens* claim under the Fourth Amendment's Search and Seizure Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause. *See Bivens*, 403 U.S. at 389, 397 (finding a private cause of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a *Bivens* claim under the equal protection component of the Fifth Amendment's Due Process Clause for gender discrimination arising from the defendant congressman's decision to fire his female secretary); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment arising from prison officials' failure to treat an inmate's asthma that resulted

in the inmate's death). Beyond these three circumstances, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution. *See Ziglar*, 582 U.S. at 131.

In *Ziglar*, the Supreme Court made clear that courts should not find rights and remedies pursuant to *Bivens* beyond the three contexts already recognized. *Id.* at 135 ("Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). The Supreme Court also set forth a two-step analysis required before finding a *Bivens* cause of action in a new context or against a new category of defendants: the court must first determine whether the context in which the claim arises is new. *Id.* at 139. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.*

If a case implicates a new *Bivens* context, the court then must consider whether there are "special factors counselling hesitation" in extending the *Bivens* remedy "in the absence of affirmative action by Congress." *Id.* at 136 (cleaned up). The special factors inquiry requires courts to "consider the risk of interfering with the authority of the other branches, and . . . [to] ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[]' . . . and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez v. Mesa*, 589 U.S. 93, 99–103 (2020) (quoting *Ziglar*, 137 S. Ct. at 137). However, if "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 582 U.S. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alteration omitted).

### First Amendment: Retaliation

The Supreme Court categorically held, in *Egbert v. Boule* that "there is no *Bivens* action for First Amendment retaliation." 596 U.S. 482, 499 (2022); *Ojo v. Decker*, No. 22-1641-PR, 2023 WL 6053006, at *1 (2d Cir. Sept. 18, 2023) (holding the plaintiff "cannot state a *Bivens* claim for First Amendment retaliation"). Plaintiffs' First Amendment retaliation claim is therefore dismissed.

### First and Fourth Amendments: Legal Mail

Plaintiffs allege that Defendant Puzio unlawfully allowed mailroom personnel to interfere with their legal mail. Plaintiffs claim that this violated their Fourth Amendment rights, specifically their right to privacy. SAC at ¶¶ 40–42. However, incarcerated individuals "do[] not retain any privacy right protected by the Fourth Amendment with respect to the monitoring or opening of [their] mail." *Braithwaite v. Suffolk Cnty. New York*, No. 22-CV-3750(JS)(AYS), 2022 WL 16837341, at *13 (E.D.N.Y. Nov. 9, 2022). To the extent that Plaintiffs attempt to raise Fourth Amendment claims for interference with their legal mail, those claims are dismissed. The Court, however, liberally construes Plaintiffs' claims as implicating their First Amendment right to free speech and access to the courts. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Mendoza v. Edge*, 615 F. Supp. 3d 163, 170 (E.D.N.Y. 2022).

With respect to First Amendment claims generally, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663, n.4 (2012). "[N]ationwide, district courts seem to be in agreement that, post-[*Ziglar*], prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *White v. Hess*, No. 14CV03339CBALB, 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) (internal quotation marks and citations omitted). And when invited, courts have declined to extend *Bivens* to claims

involving interference with legal mail. *See, e.g.*, *Mendoza*, 615 F. Supp. 3d at 170; *Cicchiello v. Warden Danbury FCI*, No. 3:24CV1240 (VAB), 2025 WL 437305, at *5 (D. Conn. Feb. 7, 2025); *Sharp v. Numsen*, No. 18-CV-195-WMC, 2022 WL 834421, at *7 (W.D. Wis. Mar. 21, 2022); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 522 (M.D. Pa. 2019); *Wise v. C. Maruka*, No. CV 1:20-00056, 2021 WL 1603819, at *16–18 (S.D.W. Va. Jan. 5, 2021), *report and recommendation adopted sub nom. Wise v. Maruka*, No. CV 1:20-00056, 2021 WL 1146002 (S.D.W. Va. Mar. 25, 2021), *aff'd*, No. 21-6816, 2023 WL 1519515 (4th Cir. Feb. 3, 2023); *Clark v. Ciolli*, No. 121CV01081SKOPC, 2022 WL 17475718, at *6–7 (E.D. Cal. Dec. 6, 2022), *report and recommendation adopted*, No. 121CV01081ADASKOPC, 2023 WL 3762458 (E.D. Cal. June 1, 2023); *King v. Hill, No. 21-CV-01719-JPG*, 2022 WL 3348789, at *4 (S.D. Ill. Aug. 12, 2022). This Court finds the reasoning of the above-cited opinions persuasive, and declines to extend *Bivens* to Plaintiffs' legal mail claims.

Further, though Plaintiffs allege that Defendant Puzio failed to train mailroom staff which resulted in their opening legal mail, SAC at ¶ 82, Plaintiffs only identify a single incident in which mailroom personnel opened such mail without Plaintiffs being present: December 13, 2024. *See* SAC ¶¶ at 40–42. An isolated incident of mail tampering is usually insufficient to establish a constitutional violation. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975); *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir. 1986). The inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail."[12] *Davis*, 320 F.3d

---

[12] Plaintiffs specifically allege that the mail opened on December 13, 2024, was mail from this Court regarding this action. SAC at ¶¶ 40, 42. The Court notes that, although "[i]nmates . . . have a greater expectation of privacy in legal correspondence," *Wine v. Semple*, No. 3:18-CV-967 (VAB), 2020 WL 1289922, at *4 (D. Conn. Mar. 18, 2020), courts in other circuits have held that "[m]ail *from the courts*, as contrasted to mail from a prisoner's lawyer, is not legal mail," *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998) (emphasis added); *see also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (explaining the First Amendment does not prohibit opening mail from the courts outside the recipient's presence); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) ("With minute and irrelevant exceptions all correspondence from a court to a litigant is a public

at 351 (quoting *Cancel v. Goord*, No. 00 Civ. 2042 LMM, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)). Plaintiffs allege only one isolated incident of mail tampering. They do not allege any ongoing or policy-driven interference with their legal mail, or that they suffered any concrete injury as a result of this incident. Even if Plaintiffs could bring such a claim under *Bivens,* their allegations here are insufficient to plausibly state a First Amendment claim.

Accordingly, Plaintiffs' constitutional claims related to alleged mail tampering are dismissed.

### Eighth Amendment: Deliberate Indifference

Plaintiffs' remaining allegations are that Defendants Puzio and Greene acted with deliberate indifference to their general safety and well-being, and were deliberately indifferent to their medical needs. The Court addresses the two types of Eighth Amendment claims separately.

### *Eighth Amendment: Conditions of Confinement*

Plaintiffs allege that Defendants violated their Eighth Amendment rights through deliberate indifference to various conditions of Plaintiffs' confinement, including overcrowding; poor air quality, ventilation, and sanitation; and exposure to hazardous substances. While not entirely clear, it appears that some of Plaintiffs' medical conditions stem from the alleged unsanitary and unsafe conditions at FCI Danbury. Multiple courts in this district and circuit have held that damages claims based on "inhumane conditions of confinement" constitutes an impermissible extension of *Bivens* into a new context. *Cantatore v. Pullen*, No. 3:22-CV-1232 (SVN), 2023 WL 4826557, at *4 (D. Conn. July 27, 2023); *see also, e.g., Nasiruddin v. Pliler*, No. 21-CV-7044 (CS), 2024 WL 2262664, at *9 (S.D.N.Y. May 17, 2024) (collecting cases); *Hill v. Tatum*, No. 1:17-CV-04070 (ALC), 2025 WL 918863, at *5 (S.D.N.Y. Mar. 26, 2025) (citing *Cicchiiello v. Warden Danbury*

document, which prison personnel could if they want inspect in the court's files."). *But see Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003) (holding that mail from a court constitutes legal mail).

*FCI*, No. 3:24CV1240 (VAB), 2025 WL 437305, at *5 (D. Conn. Feb. 7, 2025)); *Iotova v. Quay*, No. 19-CV-1957 (DG)(MMH), 2024 WL 923931, at *11 (E.D.N.Y. Mar. 4, 2024), *report and recommendation adopted as modified*, No. 19CV01957DGMMH, 2024 WL 1513642 (E.D.N.Y. Apr. 8, 2024) (finding that plaintiffs' non-medical conditions of confinement claims present a new *Bivens* context.).[13]

And in each of those cases, the courts declined to imply a *Bivens* cause of action, primarily due to the existence of alternate remedial processes such as the FTCA, the BOP's Administrative Remedy Program, and the availability of habeas corpus relief under 28 U.S.C. § 2241. *See, e.g., Cantatore*, 2023 WL 4826557, at *4; *Nasiruddin*, 2024 WL 2262664, at *10; *Hill*, 2025 WL 918863, at *7; *Cicchiiello*, 2025 WL 437305, at *5–6; *Iotova*, 2024 WL 923931, at *10. The Court sees no reason to deviate from that approach here. Because Plaintiffs' conditions of confinement claims present a new *Bivens* context, and Plaintiffs can seek redress for their concerns related to their general conditions of confinement through means other than *Bivens*, the Court declines to extend a *Bivens* remedy to these allegations. Plaintiffs' Eighth Amendment conditions-of-confinement claim under *Bivens* is therefore dismissed.

### Eighth Amendment: Deliberate Indifference to Medical Treatment Related to Certain Plaintiffs' Discrete Medical Ailments

Plaintiffs' Eighth Amendment deliberate indifference to medical treatment claims for discrete ailments are potentially analogous to the recognized *Bivens* claim in *Carlson*, 446 U.S. 14. However, the Court concludes that those claims, alleged by various individual Plaintiffs, are

---

[13] The Court also finds the Fourth Circuit's decision in *Tate v. Harmon,* 54 F.4th 839, 846 (4th Cir. 2022) persuasive. There, the court compared the plaintiff's "broad-based, systemic" conditions of confinement claims to the most analogous recognized *Bivens* claim, *Carlson*, 446 U.S. 14, which addressed a specific claim stemming from a discrete incidence of medical indifference. The court found *Carlson* "materially distinct from a systemic claim based on a collection of prison conditions that could vary from cell to cell, from prison to prison, and from time to time, implicating a broad class of inmates suffering ill-defined injuries with ill-defined damages." *Tate*, 54 F.4th at 847.

misjoined in this action. The Court cannot, therefore, adequately address them under § 1915A until they are severed.

Pursuant to Rule 20 of the Federal Rules of Civil procedure, multiple plaintiffs may join in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). The Court has "broad discretion" under Fed. R. Civ. P. 21 to "[o]n motion or on its own, … at any time, on just terms, add or drop a party." *Coleman v. Semple*, No. 3:24-CV-464 (SRU), 2025 WL 1316596, at *1 (D. Conn. Apr. 9, 2025). The court may therefore sever any claim, "even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." *Id.* (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).

Here, Plaintiffs' only remaining claims are their *Bivens* claims for Eighth Amendment deliberate indifference to medical care.[14] Only Plaintiffs Lynch, Morris, Keeser, Burghardt, Armstrong, and Brehon asserted such claims. Though they all allege that they were harmed by Defendant Greene's and/or Defendant Puzio's[15] deliberate indifference to their medical needs, they suffered from different maladies, ranging from hip replacements to kidney infections. The Plaintiffs do not describe the history of their individual medical issues or courses of treatment in detail, but the Court may infer that they differ from Plaintiff to Plaintiff. Plaintiffs' alleged injuries, therefore, do not arise out of the same transaction or occurrence, nor do their claims depend on shared questions of fact, making their joinder inappropriate under Rule 20.

---

[14] The Court does not, at this time, express an opinion as to whether Plaintiffs, either together or individually, plausibly allege *Bivens* claims against Defendants on these allegations.

[15] Based on the Court's reading of the Complaint, it is not clear whether Plaintiffs intend to allege deliberate indifference against Defendant Puzio.

Further, of the six Plaintiffs with undismissed claims, according to the docket in this case and the BOP website, three remain at FCI Danbury, two have been released from BOP custody, and one has been transferred to a different BOP facility. The court in *Pinson v. Fed. Bureau of Prisons* detailed the difficulties of "the practical realities of managing [] pro se litigation involving multiple incarcerated and non-incarcerated Plaintiffs," and determined that those issues "militate against adjudicating the Plaintiffs' claims in one action." No. 24-CV-1312 (LTS), 2024 WL 2133831, at *2 (S.D.N.Y. Apr. 16, 2024). No Plaintiff can represent any other, and therefore "every pleading, written motion, or other paper [must] be signed by every party personally." *Id.* Further, "Plaintiffs would have at best only a very limited opportunity to discuss case strategy, share discovery, or even provide each other with copies of the motions and notices that they file with the Court," and this would likely "result in piecemeal submissions, delays, and missed deadlines." *Id*; *see also Coleman*, 2025 WL 1316596, at *2.

As in *Pinson* and *Coleman*, the Court "concludes that allowing this case to proceed as a multi-plaintiff case would not be fair to the Plaintiffs and would not achieve judicial economy." *Pinson*, 2024 WL 2133831, at 3. Therefore, pursuant to Fed. R. Civ. P. 21, the Court SEVERS this action, and drops all Plaintiffs other than Rickey Lynch from this action. Mr. Lynch shall be the sole Plaintiff who proceeds under this case caption. However, the Court reserves ruling on Plaintiff Lynch's Eighth Amendment medical indifference claim until he files an amended complaint consistent with this Order to ensure the Court knows which allegations are attributed to Plaintiff Lynch and to whom he attributes the alleged misconduct.

The remaining Plaintiffs' claims against Defendants regarding deliberate indifference to medical care are severed and dismissed without prejudice.

**Orders**

For the foregoing reasons, pursuant to 28 U.S.C. § 1915A, the Court orders the following:

(1) Plaintiffs' FTCA claims are DISMISSED without prejudice;

(2) Plaintiffs' claims for injunctive relief against the United States are DISMISSED with prejudice;

(3) Plaintiffs' claims for injunctive relief against the individually named defendants are DISMISSED–

    a. without prejudice as to all Plaintiffs who remain incarcerated at FCI Danbury; and

    b. with prejudice as moot as to all Plaintiffs who are no longer incarcerated at FCI Danbury;

(4) Plaintiffs' *Bivens* claims for damages, alleging violations of their First and Fourth Amendment rights are DISMISSED with prejudice;

(5) Plaintiffs' *Bivens* claims for damages, alleging violations of their Eighth Amendment rights via generally unconstitutional conditions of confinement are DISMISSED with prejudice;

(6) The *Bivens* claims asserted by Plaintiffs Morris, Keeser, Burghardt, Armstrong, and Brehon, alleging deliberate indifference to their discrete medical issues are DISMISSED without prejudice.

(7) Plaintiff Lynch shall be the sole Plaintiff whose claims proceed under this case. The Clerk of Court is directed to terminate all remaining Plaintiffs in this action, with the exception of Plaintiff Lynch.

(8) Plaintiff Lynch shall file an Amended Complaint on or before **October 10, 2025**, asserting his Eighth Amendment deliberate indifference claim related to his specific,

individual medical issues. He may also attempt to correct the deficiencies identified by the Court and re-assert any claim that was dismissed **without prejudice** as to him. **Failure to docket an amended complaint by October 10, 2025 will result in dismissal of Plaintiff Lynch's claims.**

Plaintiffs other than Plaintiff Lynch may each initiate a **separate action by filling a new complaint that asserts *only claims asserted on behalf of the named Plaintiff.*** The new Complaint must address the issues identified by the Court and may re-assert any of claims that were dismissed **without prejudice** in this order. Any Plaintiff who wishes to pursue his individual claims must do so on or before **October 10, 2025**.

With respect to any Plaintiff who chooses to file a new case, the Clerk of Court is respectfully instructed to apply each Plaintiff's payment in this action (if any) to their newly filed case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of September, 2025.


  */s/ Kari A. Dooley*                          
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE