**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICKEY LYNCH, | : | No. 3:24-cv-01944 (KAD) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT GREENE, JR., *et al.*, | : | August 6, 2026 |
| *Defendant*. | : | |

**MEMORANDUM OF DECISION**
**Re: Defendants' Motion to Dismiss (ECF No. 164), Plaintiff's Motion for Leave to File a Fourth Amended Complaint (ECF No. 167), and Plaintiff's Motions to Expedite (ECF Nos. 174, 175)**

Kari A. Dooley, United States District Judge.

On December 5, 2024, *pro se* Plaintiff Rickey Lynch ("Plaintiff"), who was then a federal inmate incarcerated at the Federal Correctional Institution, Danbury ("FCI Danbury"), filed a putative class action complaint with other federal inmates. *See* Compl., ECF No. 1. Plaintiff, who now proceeds alone after several previous orders of the Court,[1] has amended his complaint three times. *See* Am. Compl., ECF No. 2 (amended December 5, 2024); 2d Am. Compl., ECF No. 69 (amended December 26, 2024); 3d Am. Compl., ECF No. 148 (amended September 23, 2025).

Plaintiff's Third Amended Complaint, which is the operative complaint, alleges claims against Defendant Dr. Robert Greene, Jr., under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) *et seq*. *See generally* 3d Am. Compl., ECF No. 148.

---

[1] Upon Initial Review, the Court concluded that the claims of the many plaintiffs were improperly joined as each alleged claims arising from separate and distinct conditions of confinement. And to the extent several plaintiffs brought medical deliberate indifference claims, those too arose out of separate and distinct conduct on the part of Defendant Greene and involved distinct medical issues across plaintiffs. Accordingly, all claims by plaintiffs other than Plaintiff Lynch were severed. IRO, ECF No. 145.

Defendants now move to dismiss Plaintiff's Third Amended Complaint on multiple grounds. *See* Mot. to Dismiss, ECF No. 164. Plaintiff opposes that motion, *see* Opp'n, ECF No. 165, and he also moves for leave to file a Fourth Amended Complaint, *see* Mot. for Leave, ECF No. 167. Plaintiff has additionally filed two Motions to Expedite. Mots. to Expedite, ECF Nos. 174, 175.

For the reasons that follow, Defendants' Motion to Dismiss, ECF No. 164, is **GRANTED**. The *Bivens* claim against Dr. Greene is **DISMISSED** with prejudice. The FTCA claim against the United States is **DISMISSED** without prejudice. Plaintiff's Motion to Amend, ECF No. 167, and Motions to Expedite, ECF Nos. 174, 175, are accordingly **DENIED AS MOOT**.

**Allegations**

The following facts are ascertained from the Third Amended Complaint and are accepted as true for the purpose of Defendants' Motion to Dismiss. At the time Plaintiff filed his initial complaint, Plaintiff was an inmate at FCI Danbury. *See* 3d Am. Compl., ECF No. 148 at ¶ 3. Plaintiff was released from custody on April 25, 2025.[2]

Defendant Dr. Greene is a physician at FCI Danbury. *Id*. at ¶ 4. Since 2011, Plaintiff has had "stage 2 mild kidney disease[.]" *Id*. at ¶¶ 6–7. Plaintiff sought treatment while at FCI Danbury, "complain[ing]" to FCI Danbury medical staff that he was in extreme chronic pain and was experiencing swelling. *Id*. at ¶ 10. Although medical staff told him they would follow up, they did not. *Id*. at ¶¶ 10–11 (explaining that he submitted numerous sick call requests).

On October 17, 2024, Plaintiff saw three FCI Danbury medical providers (Drs. Daniel Facer, Marilyn Garcia, and Justin Gibson), none of whom ordered what Plaintiff considered to be the

---

[2] *See* BOP, *Inmate Locator*, https://www.bop.gov/inmateloc (Reg. No. 58810-509) (last visited Aug. 6, 2026). The Court may take judicial notice of content on the BOP's Inmate Locator website. *See United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).

required diagnostic tests. *Id*. ¶ 12. His pain and swelling continued until he was wheelchair bound. *Id*. at ¶ 13.

On October 23, 2024, Plaintiff saw a FCI Danbury medical provider, who ordered an MRI and an X-Ray. *Id*. at ¶ 14. About a month later, Plaintiff saw other medical providers, who diagnosed him with varicose veins. *Id*. Those providers reported their findings to Defendant Dr. Greene, who saw Plaintiff again and recommended a follow-up. *Id*. at ¶ 15. Plaintiff alleges that despite clear evidence of stage 2 chronic kidney disease, Plaintiff was not seen or treated for two more months as his symptoms of pain and swelling worsened. *Id*. at ¶ 16. Around March 2025, Plaintiff continued to make requests for treatment. *Id*. at ¶ 17.

When Plaintiff was released from custody in April 2025, he saw a physician who informed him that his lack of treatment caused his kidney disease to progress from stage 2 to stage 3. *Id*. at ¶ 20. He had also developed Deep Vein Thrombosis and resultant blood clots in his leg. *Id*. Plaintiff had to receive emergency treatment for a pulmonary embolism. *Id*. at ¶ 21.

Plaintiff alleges that around October 13, 2024, he sought the forms required to seek informal resolution through the administrative exhaustion process, but staff refused to give him the forms. *Id*. at ¶¶ 25–28. On November 12, 2024, he wrote to the BOP Northeast Regional Office, informing that office of his "personal injury" by FCI Danbury medical personnel and that FCI Danbury staff "refuse[d] to provide" the forms related to administrative exhaustion for either his *Bivens* claim or the FTCA claim (the Standard Form 95 ("SF-95")).[3] *Id*. at ¶ 29. On March 28, 2025, the BOP Northeast Regional Office denied his claim and by letter advised Plaintiff that there was insufficient

---

[3] Defendants attached the Affidavit of Cheryl Magnuson who avers that in fact, Plaintiff submitted the SF-95 in connection with his FTCA claim of medical negligence. Ex. 2, ECF No. 164-2 at ¶¶ 21, 23. Indeed, the forms are attached to the Affidavit. *Id*. at 13–14; 18–19. Plaintiff, although alleging such forms were denied to him, does not deny that he submitted these SF-95 forms.

3

evidence to sustain his claim, and that he could file suit within six months if he remained dissatisfied. *Id*. at ¶ 30.  By that point, Plaintiff had already filed suit.  *See* Compl., ECF No. 1.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id*. Nevertheless, when reviewing a motion to dismiss, the Court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010) (citation omitted).  Moreover, where a plaintiff proceeds *pro se*, the Court must construe his pleadings liberally, and interpret the complaint to raise the strongest arguments it suggests.  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted).

Further, the appropriate analysis for a facial challenge to subject matter jurisdiction, is similar to that required under Rule 12(b)(6).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted).  The task of the district court is to determine whether, after accepting as true all material

factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id*. at 56–57.  However, where there is a fact-based challenge to subject matter jurisdiction, the "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  And a Defendant asserting such a fact-based challenge may rely upon affidavits and other evidence outside the pleadings. *Carter*, 822 F.3d at 57.  "In opposition to such a motion the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant[.]" *Id*.

**Discussion**

Defendants move to dismiss on five grounds: (1) Plaintiff failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2000), prior to filing suit for his *Bivens* claim; (2) Plaintiff's *Bivens* claim fails in that it does not fit the category of claims for which *Bivens* affords relief; (3) Plaintiff's *Bivens* claim fails to state a plausible claim as to deliberate indifference; (4) Defendant Dr. Greene is entitled to qualified immunity with respect to the *Bivens* claim; and (5) Plaintiff failed to properly exhaust his FTCA claim prior to filing suit.  Mot. to Dismiss, ECF No. 164 at 2–3.  In his Opposition to the Motion to Dismiss, Plaintiff contends that the PLRA's exhaustion requirement does not apply to him as a former prisoner and that his FTCA claim was timely filed.  Opp'n, ECF No. 165 at 7.

Preliminarily, the Court does not determine whether Plaintiff has exhausted his *Bivens* claim in the context of the Motion to Dismiss.  "[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle." *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003).  Plaintiff has alleged that administrative

5

remedies were unavailable, and therefore, the Court declines to decide the issue of exhaustion of his *Bivens* claim at this stage. *See* 3d Am. Compl., ECF No. 148 at ¶ 29. However, because the Court concludes that Plaintiff's *Bivens* claim does not fall into a category of claims for which *Bivens* affords relief and the FTCA claim is unexhausted, the Court does not reach Defendants' other arguments and limits its discussion accordingly.

### *Bivens*

For purposes of the Court's Initial Review Order only, *see* ECF No. 149, Plaintiff's *Bivens* claim asserting deliberate indifference related to medical care was permitted to proceed. Plaintiff's *Bivens* claim is limited to his allegations against Defendant Dr. Greene. *See* Order, ECF No 149. To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

Not all alleged constitutional violations give rise to a damages remedy under *Bivens*. The Supreme Court has recognized a remedy for damages in only three contexts: (1) a Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017).

To determine whether a plaintiff's claim may proceed under *Bivens*, the Court must conduct a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). The first step asks, "whether the case presents 'a new *Bivens* context' — *i.e.*, is it 'meaningful[ly]' different from the three cases in

which the Court has implied a damages action." *Id.* (quoting *Ziglar*, 582 U.S. at 139).  If a case arises in a "new *Bivens* context," the Court proceeds to the second step, where it considers "whether there are any special factors that counsel hesitation about granting the extension" of *Bivens* into a new context.  *Hernández v. Mesa*, 589 U.S. 93, 102 (2020) (cleaned up).

"Courts considering medical claims filed under *Bivens* have routinely found variances in circumstances and severity [that] render deliberate indifference claim[s] different from *Carlson* and thus aris[ing] in a 'new context.'" *Churuk v. Canarozzi*, No. 22-cv-1395 (VDO), 2024 WL 2149036, at *10 (D. Conn. Apr. 2, 2024) (cleaned up).  The Supreme Court has held that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 589 U.S. at 103.  Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context." *Ziglar*, 582 U.S. at 147.  "[E]ven a modest extension is an extension." *Id.*; *see also Egbert*, 596 U.S. at 496 (concluding Congress is often better equipped than the courts to create a damages remedy).

In *Carlson*, Plaintiff, the estate of Mr. Jones, alleged an Eighth Amendment violation arising from petitioners' — federal prison officials — deliberate indifference to the decedent's medical condition.  *Id*.  Petitioners were purportedly aware of the seriousness of the decedent's condition and the inadequacy of the medical facilities and staff at the facility at which he was housed.  *Id*.  Nonetheless, petitioners "kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to

an outside hospital." *Id*. The Complaint alleged that Mr. Jones died as a result of these actions and inactions. *Id*.

Here, Plaintiff alleges that in 2011, he was diagnosed with "stage 2 mild kidney disease." 3d Am. Compl., ECF No. 148 at ¶ 6. He was first held at the Federal Medical Center in Devens, Massachusetts ("FMC Devens") because it was a medical facility equipped to monitor and treat his kidney function. *Id*. at ¶ 9. He was transferred to FCI Danbury upon reclassification of his care level. *Id*. at ¶ 10. Once there, Plaintiff complained of extreme chronic pain in his hips, legs, and feet. *Id*. Plaintiff submitted call slips on October 11 and 12, 2024 and on October 17, 2024, Plaintiff was seen by three medical providers (not named in the *Bivens* claim) who did not order any further testing or follow-up. *Id*. at ¶¶ 11–12. However, after making further complaints about chronic pain, another provider saw him on October 23, 2024 and conducted an x-ray and MRI. *Id*. at ¶ 13. Approximately one month later, he was diagnosed with varicose veins. *Id*. at ¶ 14. Plaintiff alleges he was not seen again despite making multiple requests on or about March 16, 2025. *Id*. at ¶¶ 16–19. Upon his release on April 25, 2025, Plaintiff saw his doctor, who diagnosed him with deep vein thrombosis and determined that Plaintiff's kidney disease had advanced to stage 3. *Id*. at ¶ 20. Notably, as to Dr. Greene, the only Defendant named in the *Bivens* claim, Plaintiff alleges that Dr. Greene was "subjectively aware" of a serious medical need and deliberately disregarded it. *Id*. at ¶ 22. He alleges that when he saw Dr. Greene on November 23, 2024, his symptoms were clear and yet Dr. Greene failed to follow up for two months, resulting in chronic and significant untreated pain. *Id*. at ¶¶ 15–16. He alleges that Dr. Greene's chosen treatment on November 23, 2024, "steroid injection and lidocaine patched (sic)" was an "ineffective solution" for his (later diagnosed) Deep Vein Thrombosis. *Id*. at ¶ 22. Finally, he asserts that Dr. Greene should have ordered "more than x-rays to rule out DVT." *Id*. (cleaned up).

8

Dr. Greene's alleged conduct by Plaintiff is meaningfully different from the conduct of petitioners in *Carlson*. Unlike Mr. Jones, Plaintiff does not allege that he ever experienced an acute life-threatening emergency, such as an asthma attack. Furthermore, the allegations do not support that Defendant's actions actively worsened Plaintiff's condition, whereas in *Carlson*, petitioners administered contra-indicated medication, failed to render timely medical care, used medical devices known to be inoperative, and failed to timely transfer him to a hospital that could render the necessary emergent care. *Carlson*, 446 U.S. at 16 n.1. Unlike the case involving Mr. Jones, where doctors advised that he be housed elsewhere in order to tend to his medical conditions, *id*., Plaintiff was originally designated to a medical facility and only transferred after his care level was determined to have decreased. Am. Compl., ECF No. 148 at ¶ 10. Thereafter, Plaintiff saw Dr. Greene who evaluated his condition; treated his complaints and ordered follow up care, albeit not to Plaintiff's satisfaction. *Id*. at ¶ 19. And although Plaintiff alleges he was in extreme chronic pain, he does not allege that he made any effort to seek additional medical attention between November 23, 2024, when he saw Dr. Greene, and March 16, 2025. *Id*. at ¶¶ 16–19.

As such, the Court finds that Plaintiff's allegations as to Dr. Greene are "meaningfully different" from those alleged and recognized in *Carlson* as providing a damages remedy. *Hernández*, 589 U.S. at 103. And the Court is further satisfied that the Supreme Court would not recognize a new *Bivens* category in this context. Since the three contexts described above were identified, the Supreme Court "has not implied additional causes of action under the Constitution." *Egbert*, 596 U.S. at 491. "At bottom, creating a cause of action is a legislative endeavor." *Id*. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent

9

of federal-court jurisdiction under Article III." *Ziglar*, 582 U.S. at 137.  Moreover, as discussed, *infra*, the FTCA is an alternative remedy for such allegations.  *See Hernández*, 589 U.S. at 111.

Accordingly, the Court finds that Plaintiff's allegations are meaningfully different from those of *Carlson* and that it would be improper to find a new implied damages remedy in this context.  The *Bivens* claim is **DISMISSED** with prejudice.[4]

### *FTCA*

The Court turns next to Plaintiff's FTCA claim against the United States of America.  "The FTCA provides a limited waiver of sovereign immunity for claims seeking damages for injuries arising from the tortious conduct of federal officers or agents acting within the scope of their office or employment."  *Carroll v. United States*, No. 25-1647, 2026 WL 1506618, at *1 (2d Cir. May 28, 2026) (citations omitted).  "[B]efore suing under the FTCA, a plaintiff must exhaust administrative remedies by 'first present[ing] the claim to the appropriate federal agency . . . within two years of the date the claim accrued.'"  *Id*. (quoting *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013); 28 U.S.C. § 2401(b).  Specifically, Section 2675(a) of the FTCA provides, in pertinent part, that:

> An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section.

Presentation requires that a claimant submit written notice to the agency, and that the notice must provide "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it

---

[4] Therefore, the Court does not reach the issue of whether Plaintiff's allegations are sufficient to state an Eighth Amendment deliberate indifference claim.

must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins v. United States*, 996 F.3d 102, 117, 119 (2d Cir. 2021). *See also Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998). "[T]he burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements": including exhaustion. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (collecting cases). "In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *Id.* (citation omitted); *Manchanda v. Lewis*, No. 21-1088-CV, 2021 WL 5986877, at *2 (2d Cir. Dec. 17, 2021). Because these requirements are jurisdictional, they cannot be waived. *Carroll*, 2026 WL 1506618, at *1 (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)).

It is manifest from the Complaint and the record before the Court that Plaintiff did not properly exhaust his FTCA claim before filing suit. Plaintiff has not alleged or otherwise established that his claim was "'finally denied by the agency,' either 'in writing' or by 'failure to make [a] final disposition within six months after [his claim was] filed." *Manchanda*, 2021 WL 5986877, at *4 (quoting 28 U.S.C. § 2675(a)) (cleaned up). To the contrary, Plaintiff's SF-95 was received by the agency on November 29, 2024.[5] He filed this suit *six days later* on December 5, 2024. Plaintiff does not allege that the BOP made a final disposition before he filed suit, and in fact he alleges that the BOP issued a denial of his claim on March 30, 2025, months after he filed this lawsuit. 3d Am. Compl., ECF No. 148 at ¶ 30. The filing date of his Third Amended Complaint is irrelevant because the relevant date is the initial filing of the suit. *See Phillips v. United States Postal Serv.*, No. 23-819,

---

[5] Defendants' Motion to Dismiss incorrectly referenced the BOP's date of acknowledgment of Plaintiff's SF-95 form, rather than the BOP's receipt of the form, as the trigger date for the six-month timeline. Mot. to Dismiss, ECF No. 164-1 at 36–37. Plaintiff brought this error to Defendants' attention, *see* Opp'n, ECF No. 165 at 8–9, and Defendants acknowledged their error and corrected it, *see* Notice, ECF No. 179 at 2. This error is, however, of no moment for present purposes.

2024 WL 1613897, at *2 (2d Cir. Apr. 15, 2024) ("The FTCA requires exhaustion to be completed *before filing suit*, not after.") (emphasis in original) (citing *McNeil v. United States*, 508 U.S. 106, 112 (1993)).

Accordingly, the Court concludes that Plaintiff failed to properly exhaust his administrative remedies as to his FTCA claim, which means that the Court lacks subject matter jurisdiction to adjudicate the claim. Plaintiff's claim under the FTCA is therefore dismissed without prejudice. *See Manchanda*, 2021 WL 5986877, at *4; *see also Carter*, 822 F.3d at 54–55 (2d Cir. 2016) (noting that dismissal for lack of subject matter jurisdiction must be without prejudice).

**Additional Motions**

Three additional motions are pending. First, Plaintiff moves for leave to file a Fourth Amended Complaint in order to increase his claim for damages. *See* Mot. for Leave, ECF No. 167. In light of the Court's ruling dismissing the Third Amended Complaint, Plaintiff's motion is denied as moot. Second, Plaintiff filed two Motions to Expedite a ruling on his pending Motion to Amend. *See* Mots. to Expedite, ECF Nos. 174, 175. Because the Court resolved that motion in this order, Plaintiff's motions to expedite are likewise denied as moot.

**Conclusion**

For all the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 164, is **GRANTED**. The *Bivens* claim is **DISMISSED** with prejudice. The FTCA claim is **DISMISSED** without prejudice. Plaintiff's Motions, ECF Nos. 167, 174, 175, are **DENIED AS MOOT**. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** this 6th day of August, 2026 at Bridgeport, Connecticut.

 */s/ Kari. A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

12